The LAITRAM CORPORATION & Intra-
lox, Inc., Plaintiffs–Appellants,

v.

The CAMBRIDGE WIRE CLOTH
COMPANY, Defendant–Appellee.

No. 90–1129.

United States Court of Appeals,
Federal Circuit.

Nov. 21, 1990.

Paul J. Hayes, Weingarten, Schurgin, Gagnebin & Haynes, Boston, Mass., argued, for plaintiffs-appellants. With him on the brief was Victor B. Lebovici.

William T. Enos, Bernard, Rothwell & Brown, P.C., Washington, D.C., argued, for defendant-appellee. With him on the brief was G. Franklin Rothwell.

Before MARKEY, Circuit Judge,[*] MILLER, Senior Circuit Judge, and BROWNING, District Judge.[**]

MARKEY, Circuit Judge.

The Laitram Corporation and Intralox, Inc. (Laitram) appeal from a grant to Cambridge Wire Cloth Company (CWC) of a summary judgment of non-infringement of Laitram's patents No. 3,870,141 and No. 4,051,949. *Laitram Corp. v. Cambridge Wire Cloth Co.*, No. S 89–756, Order and Memorandum (D.Md. Nov. 1, 1989). We vacate the judgment, remand with instructions to consider dismissal of the complaint, and sanction counsel for both sides.

## I.

### Introduction

This case is bizarre. A charade conducted by counsel for both sides led to a grant of summary judgment of non-infringement though no product accused of infringement was before the court. We are, accordingly, compelled to vacate the judgment.[1]

Further, the present record contains no evidence that any product accused of infringement had been made, used, or sold when the complaint was filed. We are, accordingly, compelled to remand the case for consideration of whether the complaint should be dismissed for lack of jurisdiction. *See Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761, 13 USPQ2d 1820 (Fed.Cir.1990).

## II.

### Absence of Accused Product Before the District Court

Laitram's complaint was filed on March 15, 1989. Nine weeks later, on May 23, 1989, Laitram took the deposition of CWC's Vice President Bailey, who said a part of a conveyor belt was "designed and finalized" in January 1989. At that deposition, an item was for the first time shown and delivered to Laitram's counsel who marked it for identification as "PX–1."

■ After the close of discovery, CWC moved for summary judgment of non-infringement but did not submit PX–1 or any product or representation of a product accused of infringement.[2] Instead, CWC based its motion solely on four exhibits (DXA, DXB, DXC, and DXD) never accused of infringement. Exhibits DXA–D were described in a declaration by CWC's counsel as:

Upon information and belief, Defendant's physical exhibits A–D submitted with these Summary Judgment papers are illustrative of four *possible constructions*

[*] Circuit Judge Markey vacated the position of Chief Judge on 27 June 1990.

[**] Honorable William D. Browning, District Judge for the United States District Court of Arizona, sitting by designation.

1. The parties are no strangers to each other or to the courts. *See Laitram Corp. v. Cambridge Wire Cloth Co.*, 226 U.S.P.Q. 289 (D.Md.1985), *aff'd. in relevant part*, 785 F.2d 292, 228 U.S.P.Q. 935 (Fed.Cir.), *cert. denied*, 479 U.S. 820, 107 S.Ct. 85, 93 L.Ed.2d 39 (1986); *Laitram Corp. v. Cambridge Wire Cloth Co.*, 785 F.2d 292, 228 U.S.P.Q. 935 (Fed.Cir.), *cert. denied*, 479 U.S. 820, 107 S.Ct. 85, 93 L.Ed.2d 39 (1986); *Laitram*

Corp. v. Cambridge Wire Cloth Co., 863 F.2d 855, 9 U.S.P.Q.2d 1289 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2069, 104 L.Ed.2d 634 (1989). That circumstance does not, however, justify the parties' treatment of the district court, this court, and the judicial process in this case.

2. CWC, which brought the motion and was assigned the burden, insults our intelligence in proffering as its sole excuse for not offering PX–1 in evidence before the district court: "CWC did not submit PX–1 as Laitram had sole possession of PX–1." *See* Fed.R.Civ.P. 34, 45(b).

of the CRB–3000.[3] (Emphasis added).

Before the district court, the parties filed extensive briefs and parts of depositions. In their briefs, both parties referred only to "the CRB–3000," leading the court to do so; yet Laitram discussed "the CRB–3000" as though it had the construction of PX–1 and CWC discussed "the CRB–3000" as though it had the construction of DXA–D. At no time was there a specific "CRB–3000" product of agreed construction before the district court. On the basis of the papers filed, and without a hearing, the district court granted summary judgment of non-infringement, accompanying it with a Memorandum Opinion.

■ *After* entry of judgment, Laitram moved to place PX–1 and two deposition pages in the record for appeal. CWC moved to include every page referring to PX–1. The district court granted Laitram's motion, then *sua sponte* reversed itself and *properly* excluded PX–1 and all other exhibits that were not before it when it entered summary judgment.[4]

■ It is undisputed that the only products before the district court when it grant-ed judgment were the non-accused "possible constructions" DXA–D. As the record makes plain, DXA–D were not provided to Laitram during discovery and were not the subject of any record testimony, by deposition or otherwise. Nor have we been cited to any evidence that any one of exhibits DXA–D was made or used or sold or even existed at any time before the complaint was filed. Indeed, the complaint was filed on March 15, 1989 and DXA–D surfaced for the first time with CWC's motion for summary judgment in September 1989. On the present record, belt segments DXA–D must be viewed as exhibits concocted solely for the purpose of the motion.[5]

In its motion, CWC was effectively and improperly saying to the district court, "*if* we make and sell any of these four 'possible constructions' please advise that we won't infringe." [6] Federal Courts do not sit, however, to decide hypotheticals or to issue advisory opinions. A true case or controversy is required. U.S. Const. art. III, § 2.[7]

---

3. Because the record identifies no specific product as "the CRB–3000", the term appears merely a label for a product line. On appeal, the parties improperly submit only unsworn and unsupported attorney "testimony" on a fact question. (CWC's counsel says PX–1 and DXA–D are substantially identical; Laitram's counsel says they are not.) The absence of PX–1 renders that question unanswerable and renders CWC's assertion that the district court recognized identity absurd. In all events, it is improper to raise the question for the first time on appeal.

4. At oral argument, Laitram's counsel said the court "reversed itself. For what reasons, I don't know," and Laitram's brief asserts without explanation that the reversal "constitutes additional error". CWC's counsel told us at oral argument that the district court "said that it was improper to have evidence before him that was not before him on summary judgment."·

Incredibly, both counsel devoted segments of their oral presentation and over 100 pages of their briefs to argument appropriate only if PX–1 *were* before the district court when it entered summary judgment. Laitram argues PX–1 infringes; CWC argues DXA–D do not infringe and are substantially the same as PX–1. Though twice forced to read them, we have necessarily refrained from considering any of those arguments on the merits.

5. Surprisingly, CWC's brief says this in attacking a Laitram argument: "The oft-repeated 'seven eighths identical module' argument refers to a *hypothetical* belt, a single *possible construction* of a CRB 3000 belt, constructed by Laitram's attorney during a deposition." (Emphasis added.)

6. Unfortunately, Laitram's counsel failed to insist on restriction of the proceedings to a properly accused product, (assuming one was in existence when suit was filed). Laitram did not assist the court's search for truth by merely accusing CWC of misleading while failing to offer PX–1 into evidence with its opposition to CWC's motion.

7. This colloquy occurred at oral argument:

The court: But these [DXA–D] have never been produced, you told us.
CWC's counsel: That's correct.
The court: Then they aren't a product?
CWC's counsel: They had never been produced when suit was brought.
The court: Well, accuse [plaintiff] under Rule 11. Infringement suit without a basis. You don't go out and create hypothetical products and ask the district court to rule on infringement by a hypothetical product.

Because it necessarily related solely to products never accused of infringement and non-existent when the complaint was filed, the summary judgment of non-infringement cannot stand and must be vacated.

## III.

### Absence of Accused Product When Complaint Was Filed

 This court's Order of June 11, 1990, contained this:

> The parties dispute the existence of an accused product at the time suit was filed. Brief for Appellee at 4, n. 5; Reply Brief for Appellant at 5–6, n. 1. Neither party addresses the question of a court's jurisdiction over a suit for infringement in the absence of an accused product. *See Lang v. Pacific Marine and Supply Co.*, 895 F.2d 761 (Fed.Cir. 1990).

In the 113 pages of the parties' substituted briefs, one searches in vain for an answer to this court's question.

There was and is no record evidence that PX–1 (which Laitram calls the accused product) had been made or sold or was even in existence when suit was filed on March 15, 1989.[8] Nowhere does Laitram cite to any evidence that CWC had made, used, or sold PX–1 before March 15, 1989. The nearest Laitram comes is to cite Bailey's testimony that "The CRB–3000" was "designed and finalized," (with no explanation of how that constitutes infringement) and to inject *counsel's* statement, with no record citation, that PX–1 "was in existence."

Nowhere does CWC cite to any evidence that it made, used, or sold PX–1 before March 15, 1989. Indeed, CWC's original brief contained this:

> Belts constructed in accordance with each [DXA–D] design have now been sold.[9] *No CRB–3000 belts of any construction had been made or sold until long after the close of discovery.* PX–1, not before the trial court and improperly included in the joint appendix by Laitram, is a prototype of the CRB–3000. (Emphasis added).

This appears in CWC's substituted brief:

> Both parties agree that the CRB–3000 belt existed *prior to the filing of this lawsuit.* As testified to by Mr. Bailey, PX–1 is a CRB–3000 product.[10]

On this record, as counsel know, there is no such thing as *"the CRB–3000 belt"*. Indeed, as his excuse for submitting only

---

8. Having lost its post-judgment motion to add it in the district court, Laitram moved here to add PX–1, disingenuously describing it as having been "before the district court." This court improvidently granted the motion for the limited purpose of permitting argument on the exclusion of PX–1. Laitram's argument consists solely of a one-sentence naked statement that the exclusion "was error." Laitram's extensive arguments on infringement, written as though PX–1 is of record for all purposes, violated the limitation set forth in this court's order of February 26, 1990.

 The exclusion was clearly proper and PX–1, which was not presented to the district court before the judgment was entered, cannot be considered as being before this court on this appeal. In its motion in this court, Laitram asserted that the single "reference" to "PX–1" in its extensive brief in the district court constitutes submission of the physical exhibit. That assertion reflects a woefully inadequate knowledge of the differences among identification, submission, and admission of evidence.

9. The "now been sold" statement in the quote illustrates the penchant of both parties for reliance on improper testimony by counsel on appeal. It also constitutes an improper effort to inject a post-trial, non-record fact irrelevant on appeal.

 When the "now been sold" statement was repeated at oral argument, this colloquy occurred:

 The court: What has that got to do with it?

 \* \* \* \* \* \*

 The court: Is there evidence of a sale? Any invoices?

 CWC's counsel: None was submitted to the judge. No, Your Honor.

 The court: Just oral argument?

 CWC's counsel: There was no oral argument, Your Honor.

 The court: There was just counsel's statement?

 CWC's counsel: That's correct.

10. The parties cannot, of course, confer jurisdiction. Nor can jurisdiction be determined by any attempted reconciliation of the many obviously obfuscating assertions in the briefs. Presumably, the parties will exhibit greater candor when and if the existence or non-existence of an infringing product on March 15, 1989 is presented to the district court on remand in this case.

"possible constructions" DXA–D, CWC's counsel says conveyor belts are custom made after receipt of a customer's order.[11]

If there had been evidence before the district court, and there was none, that CWC intended and was preparing on March 15, 1989 to produce and sell PX–1, it would not matter, for neither intent nor preparation constitutes infringement under 35 U.S.C. § 271. *Lang*, 895 F.2d at 765, 13 USPQ2d at 1823. Laitram did not sue for declaratory judgment and we do not here confront an action filed by CWC for a declaratory judgment that DXA–D do not infringe (an action that would not lie, Laitram never having charged DXA–D as infringements). For a succinct explanation of the difference between a suit for infringement under 35 U.S.C. § 271 and a suit for a declaration of non-infringement under 28 U.S.C. § 2201, *see Rung Industries v. Tinnerman*, 626 F.Supp. 1062, 1064, 229 USPQ 930, 932 (W.D.Wash.1986).

Neither party properly addressed the question of the district court's jurisdiction in this case. Laitram did not discuss *Lang* at all in relation to whether there was an infringing product in existence on March 25, 1989. CWC says, irrelevantly, that jurisdiction is not affected by "product changes" during suit, citing *Anraku*,[12] which says nothing of any such effect, and *Rung Indus.*[13] which it merely says "distinguished" *Anraku*. CWC's sole reference to *Lang* is a statement that it cited *Rung* with approval.

On the present record, the parties have identified no specific product made, used, or sold by CWC and thus subject to a charge of infringement on March 15, 1989 when suit was filed. On that basis, there was no actual case or definite and concrete controversy over which the district court might have exercised jurisdiction. The ir-responsible treatment of the record by the parties on appeal, however, leaves open the possibility that there may have been in existence a product to which the complaint when filed may be deemed to have applied. If the district court so finds, the suit may continue in respect of that product. If not, the district court must dismiss the complaint for lack of jurisdiction.[14]

## IV.

### Sanctions

Counsel for neither side appears willing, even when cautioned, to understand and follow the rules governing the appellate process. Showing no mercy on this busy court, they first filed briefs so replete with cross-charges of misstatements and so lacking in record references as to frustrate the desire of this court to trust its officers in this case. The court was thus compelled to decline the burden of checking each statement and to reject those briefs. *See Laitram Corporation & Intralox, Inc. v. Cambridge Wire Cloth Company*, 905 F.2d 386 (Fed.Cir.1990) (listing improprieties). Continuing a kind of "Alice in Patentland" approach to the judicial process, the parties' conduct then grew "curiouser and curiouser," for their new briefs include: statements of fact with no record reference; statements of fact for which there is no record; reliance on attorney argument and counsel's unsworn fact statements as "evidence"; citation of materials and raising of questions as though they were before the district court when the present record indicates they were not; assertions of and reliance on facts that occurred after entry of the judgment appealed from; irreconcilably conflicting positions of the same party; citation of inapplicable authorities; page upon page of argument about a product that was admittedly

---

11. CWC attaches to its substituted brief as "Exhibits" deposition pages not identified to the district court, implying incorrectly that they support existence of an accused product when suit was filed.

12. *Anraku v. General Electric Co.*, 80 F.2d 958 (9th Cir.1935), *cert. denied*, 298 U.S. 678 (1936).

13. *D. G. Rung Indus. v. Tinnerman*, 626 F.Supp. 1062, 229 U.S.P.Q. 930 (W.D.Wash.1986).

14. If, as CWC's *counsel* says, CWC is *now* producing and selling a product, nothing here said would preclude Laitram from filing a proper, good faith complaint charging *that* product with infringement.

not before the district court and is not before this court; arguments directed to products never charged as infringements; disregard of the concerns expressed by this court at oral argument; and a refusal to come to grips with the questions propounded by this court. Far from aiding this court to decide, by presenting legal arguments on concrete fact patterns, counsel have in this case wasted this court's resources by playing in the rarified atmosphere of a debating society. In sum, the parties' briefs and arguments on this appeal serve not to seek but to obfuscate the truth.

■ In rejecting the original briefs, this court required substitute briefs at that time "in lieu of . . . imposing appropriate sanctions." 905 F.2d at 387. The conduct reflected in the original and substitute briefs unreasonably and vexatiously multiplied the proceedings, rendering both counsel subject to sanction under 28 U.S.C. § 1927. *Julien v. Zeringue*, 864 F.2d 1572, 1576, 9 USPQ2d 1554, 1557 (Fed.Cir.1989) (sanctioning counsel's reckless disregard for his duties to this court); *Westinghouse Elec. v. N.L.R.B.*, 809 F.2d 419, 425 (7th Cir.1987) (lawyers personally sanctioned for non-compliance with rules limiting briefs to 50 pages, double spacing and specified margins). Like Rule 38, Fed.R. App.P., however, § 1927 relates to payment of costs and attorney fees to the other side, rendering fruitless a sanction under § 1927 in this unusual case. The court must therefore look to its inherent power to discourage such conduct. *Eash v. Riggins Trucking*, 757 F.2d 557 (3rd Cir. 1985) (*en banc*).

Accordingly, counsel who signed the briefs, Messrs. G. Franklin Rothwell, William T. Enos, and Paul J. Hayes, shall each personally and individually, within 30 days of the date of this opinion, pay to the Clerk of this court for recovery into the Treasury of the United States the sum of $1,000. Though the colloquy at oral argument and this court's order of 11 June 1990 provided full warning, and the sanctionable conduct occurred in the presence of the court, *see Kapco Mfd. v. C & O Enterprises*, 886 F.2d 1485, 1495 (7th Cir.1989), any sanctioned counsel who desires to do so may, within 14 days of the date of this opinion, which time will not be extended, show cause in writing not to exceed 25 pages why he should not be required to make such payment.

## V.

## CONCLUSION

The summary judgment of non-infringement is vacated. The case is remanded to enable the district court to determine the existence or non-existence of an accused product on March 15, 1989. A sanction is imposed on each officer of the court who signed the briefs in this case.

VACATED–REMANDED–SANCTION IMPOSED.